SAMUEL BRADEN ET AL. v. JOHN F. WARD.

1. The right of lien for an attorney's costs exists only where he has received money upon the judgment in the cause, or he has arrested it *in transitu*, or where the defendant has paid the judgment after receiving notice of the attorney's claim.

2. A release under seal of a judgment, although it appears that the consideration paid for such release is less than the judgment, is a satisfaction of the judgment.

3. The act of 1875, permitting the presumption of a consideration in sealed instruments to be rebutted, was not intended to invalidate instruments where the consideration intended to pass by the parties, was paid; nor does the act apply to releases.

---

This cause is before the court upon return to a rule to show cause why an order should not be made prohibiting the assignment or satisfaction of a certain judgment in this court, until one-third of the amount of said judgment shall have been paid to John C. Lee and John M. Brown. The facts upon which the order is asked, will appear in the opinion.

Argued at June Term, 1880, before Justices DIXON and REED.

For the relators, *G. Collins.*

For the respondent, *John Linn.*

The opinion of the court was delivered by

REED, J. Samuel Braden had been, previous to 1874, employed as a laborer in putting down iron water-pipes, in the city of Toledo. His employers were Ward & Rutherford. While so employed, Braden was injured. He employed the firm of Lee, Brown & Hueston, lawyers practicing at Toledo, to bring an action. The result was a judgment in the Court of Common Pleas of Lucas county, Ohio, in favor of Braden, against Ward & Rutherford, for the sum of $1500, with $263.05 costs of suit; $209 was realized upon execution, which was applied to a part payment of the costs.

After further litigation in Ohio, by direction of Lee, Brown & Hueston, an action was brought by Messrs. Collins & Corbin, in this state, upon the Ohio judgment, and a judgment obtained in this court, on April 10th, 1879, for $1941.89.

On the 20th of February, 1880, Braden, who was then residing in Ireland, executed to 'Ward & Rutherford an acknowledgment of satisfaction of the judgment, with a power to satisfy the same of record.

Lee, Brown & Hueston now claim that the said judgment cannot be satisfied until they are first paid a certain sum of money due, by an arrangement with Braden before the commencement of the suit.

This arrangement was reduced to writing, and, by its terms, out of the amount to be realized from said suit, Lee, Brown & Hueston were to be paid all the costs and expenses of the suit, and one-third of the remainder. Ward & Rutherford were not apprised of the existence of this agreement. Collins & Corbin had no knowledge of its existence till after the execution of the power by Braden.

It appears that Ward inquired of Mr. Corbin for the residence of Braden, and that Mr. Corbin was unable to render the information. The first intelligence which Ward received of Braden's place of residence, was from a letter from Braden, inquiring whether Ward had paid any money upon the judgment. This letter was dated November 17th, 1879. Then Ward opened a communication with Braden, which resulted in his payment of $1000 or $1200 to Braden, who then executed his satisfaction-piece.

Of the existence of any agreement between Braden and his attorneys, Ward appears to have been entirely unconscious, at the time of his settlement with Braden.

The legal rule by which, in view of these facts, the rights of the relators are to be determined, does not seem to be doubtful.

It was undoubtedly well settled in England, in both the Courts of King's Bench and Common Pleas, that an attorney had a lien upon the money recovered by his client, to the amount of his bill of costs. If the money came to his lands, he might retain the amount of his bill. He might also stop the money *in transitu*, if he could lay hold of it.

It was also held that if the defendant's attorney pay to the plaintiff the debt and costs recovered, after notice to the defendant not to do so till his bill has first been satisfied, the former is liable to pay over again, to the latter, the amount of his lien. 1 *Tidd's Prac.* 338.

Where, however, the defendant—not having any notice to the contrary—compromised the debt and costs with the plaintiff before his attorney had been paid, the Court of King's Bench would not oblige the defendant to repay. *Welsh* v. *Hole, Doug.* 238.

And in the Court of Common Pleas, where there was no evidence of fraud or collusion, the defendant was permitted to compromise the action without consulting the attorney of the plaintiff. *Chapman* v. *Haw*, 1 *Taunt.* 341.

There is no instance in the practice of the English courts where the right of lien for costs has been enforced, except where the attorney has possession of the money received upon the judgment, or has arrested it *in transitu*, or else the defendant has received notice of the claim of the plaintiff's attorney before settling the judgment.

This rule as to the necessity of notice is generally adopted by the courts of this country. It has, however, been here held that the notice need not be a personal notice by the plaintiff's attorney to the defendant. Any notice of the existence of the claim, and that it will be asserted, is sufficient. *Lake* v. *Ingham* 3 *Vt.* 158; *Heartt* v. *Chipman*, 2 *Aik.* 162.

If, by the circumstances surrounding the transaction, it was manifest that the defendant's acts were induced by a desire to enable the plaintiff or his assignee to avoid such a claim, it would show a sufficient knowledge, on his part, of its existence. The court would ignore the settlement as one made by a collusion. *Martin* v. *Hawks*, 15 *Johns.* 405.

It was in view of such collusive transactions that Chief Justice Hornblower remarked, in *Berry* v. *Berry*, 2 *Harr.* 440: "Parties to a suit may undoubtedly compromise or terminate it as they please, without consulting their attorneys,

provided they do it in good faith, and their attorneys must look to their respective clients for their costs. But where the parties enter into a collusive agreement to practice a fraud upon their attorneys, the court will not aid them to consummate their unjust designs."

There is in this case no evidence of collusive action which would imply that the defendants had any knowledge of the claim of plaintiff's attorneys.

Assuming, therefore, that there was a payment and satisfaction of this judgment, there is no right of lien which this court can enforce. This renders it unnecessary to discuss a question which, had we found the existence of such notice, would have confronted us. This question is whether this agreement to pay costs and expenses out of the amount to be realized, and that the attorneys of plaintiff should receive one-third of the remainder of the judgment, could be enforced by this court by treating the right of lien for all these sums as of equal validity with the right of lien for costs. In favor of such a right is the case of *Marshall* v. *Meech,* 51 *N. Y.* 140; *contra,* the cases of *Forsythe* v. *Beveridge,* 52 *Ill.* 268, and *Wells* v. *Hatch,* 43 *N. H.* 246.

No such question could have arisen in England, because such an arrangement was there void.

Without regard to this question, we find that if there was a satisfaction of this judgment, the relators take nothing by their rule. They contend further, however, that there has been no satisfaction of this judgment. This contention is based upon the fact that Braden received only $1200 for a judgment for $1941, and the rule is invoked that the payment of a less sum will not satisfy a debt. *Cumber* v. *Wane,* 1 *Smith's Lead. Cas.* 439; *Daniels* v. *Hatch,* 1 *Zab.* 391.

One of the exceptions to this rule is when the payment is acknowledged by a release under seal. "But if the obligee or feoffee do at the day receive a part, and thereof make an acquittance, under his seal, in full satisfaction of the whole, it is sufficient by reason of the deed amounteth to an acquittal." *Co. Litt.* 212 *b.*

There was such an acquittal given by Braden to Ward & Rutherford.

The relators contend, again, that the character of a sealed instrument has been so changed by the act of 1875, (*Rev., p.* 387, § 52,) that the acquittance has lost its common law signification.

The act reads, that "In every action upon a sealed instrument, or where a set-off is founded on a sealed instrument, the seal shall be only presumptive evidence of a sufficient consideration, which may be rebutted, as if such instrument was not sealed."

I do not think this act aids the relators. If this statute includes within its operation sealed instruments like the release attacked, and it were permissible to inquire into its consideration, I do not see how it would invalidate this acquittance.

This act received a construction in the case of *Aller* v. *Aller*, 11 *Vroom* 449. It was in that case held that the design of the act was not to change the character of a sealed instrument not shown to be fraudulent or illegal. It was held that a voluntary gift made under seal was enforceable—that in sealed instruments where it was evident no consideration was intended, the absence of a consideration was not essential.

By the same reasoning, when it appears that the consideration which the parties intended to pass, actually did pass, the instrument is valid. That is the admitted fact concerning the consideration for this release.

But the act was never intended to operate upon, and its terms do not include a release under seal. This release is not a sealed instrument upon which an action is brought, nor upon which a set-off is founded. This seems too obvious for discussion.

If any authority for such a view is requisite, it is found in the construction placed upon it by the courts of New York, whence this act comes.

It is found set out in the opinion in the case of *Calkins* v.

*Long,* 22 *Barb.* 99, where the act is construed, and also in the case of *Gilleland, Ex'r,* v. *Failing,* 5 *Den.* 308.

In *Stearns* v. *Tappin,* 5 *Duer* 294, it was expressly held that the statute did not apply to a release under seal.

The rule is discharged, with costs.